**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**PROPERTIES OF THE VILLAGES, INC., a Florida Corporation**

**Plaintiff,**

**v.** **Case No: 5:19-cv-647-Oc-30PRL**

**JASON KRANZ, CHRISTOPHER DAY, ANGELA KRANZ, CYNTHIA HUGHES, NANETTE ELLIOTT, ANGIE TAYLOR, KELLY SHIPES and KD PREMIER REALTY, LLC,**

**Defendants.**

---

## REPORT AND RECOMMENDATION[1]

This action is before me upon referral of several motions, including cross motions for partial summary judgment (Docs. 100 & 101) and a motion for sanctions against Plaintiff. (Doc. 107). For the reasons explained below, I submit that the motion for sanctions should be denied, Defendants' motion for partial summary judgment should be denied, and Plaintiff's motion for partial summary judgment should be granted in part and denied in part.

### I. BACKGROUND

Property of the Villages (POV), a Florida based corporation that sells real estate and residential housing in the community known as The Villages, brought this action against KD Premier Realty and individual defendants Jason Kranz, Christopher Day, Angela Kranz, Cynthia

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Hughes, Nanette Elliott, Angie Taylor, and Kelley Shipes for breach of independent contractor agreements, misappropriation of trade secrets, computer fraud and abuse, tortious interference, and civil conspiracy. (Doc. 41).

The individual defendants are former salespersons of POV and licensed in Florida as real estate associates. Each individual defendant entered into an independent contractor agreement (ICA) with POV between June 20, 2018 and July 25, 2018. (Doc. 52-2 at p. 4-5, ¶¶ 9-17). The ICAs commenced on the day they were executed and continued for a period of one year. The ICAs contained non-competition and non-solicitation clauses that lasted "[d]uring the term of this Agreement, and for a period of twenty-four (24) months following the termination of the Agreement." (Docs. 41-1, 41-2, 41-3, 41-4, 41-5, 41-7, 41-8, at §§ 1, 10, 11). The individual defendants continued to work for POV after the one-year term of the ICAs, and resigned from POV between December 16, 2019 and January 10, 2020 (within two years of the termination of the one year agreement). (Doc. 52-2 at p. 7, ¶¶ 26-32). On December 9, 2019, defendants Christopher Day and Jason Kranz formed a limited liability company known as "KD Premier Realty, LLC." (Doc. 52-3, Exhibit P).

Prior to their resignations, POV provided the individual defendants with access to POV's listing system, computer programs, computer software, databases, and other electronic data. (Doc. 52-2 at p. 4, ¶ 7). Before submitting their resignations, the individual defendants accessed information from these systems. Now, individual defendants Day, Mr. and Ms. Kranz, Hughes, Elliott, and Taylor have their real estate licenses assigned to KD Realty. (Doc. 52-3, Exhibit Q).

## II. LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). A movant carries her burden by showing that there is an absence of evidence supporting the non-movant's case. *Denney v. City of Albany,* 247 F.3d 1172, 1181 (11th Cir. 2001). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show a genuine issue for trial. *Porter v. Ray,* 461 F.3d 1315, 1320 (11th Cir. 2006). Affidavits submitted in relation to a summary judgment motion must be "based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence." *Josendis v. Wall to Wall Residence Repairs, Inc.,* 662 F.3d 1292, 1314–15 (11th Cir. 2011).

A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict" for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Which facts are material depends on the underlying substantive law. *Id.* The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents,* 468 F.3d 755, 759 (11th Cir. 2006). However, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 743 (11th Cir. 1996).

## III. DISCUSSION

### A. Defendants' motion for sanctions

As an initial matter, Defendants' motion for sanctions (Doc. 107) is due to be denied. Although the defendants assert that POV's failure to provide all responsive materials prior to the summary judgment response deadline prevented them from being able to fully respond, POV's motion for partial summary judgment as to the affirmative defenses focuses solely on questions of law. In fact, POV's motion argues that even if all of the defendants' factual allegations are

accurate, as a matter of law the affirmative defenses fail. Therefore, the lack of discovery responses did not impact Defendants' ability to respond to the motion at all. Defendants notified the court that the other portion of the motion for sanctions requesting the court to require POV to produce the compelled documents without further delay has become moot after the court granted POV's request for a modification on. (Doc. 111). Additionally, because the court previously found good cause to narrow the discovery request, attorney's fees should not be awarded at this time.

Accordingly, Defendants' motion for sanctions should be denied.

**B. POV's motion for partial summary judgment as to certain affirmative defenses**

POV moves for summary judgement on Defendants' affirmative defenses 1, 3, 5-10, and 13. For the reasons discussed below, the motion is due to be granted in part and denied in part.

*1. Affirmative defenses 1, 6-9, and 13*

Defendants have withdrawn affirmative defense 13, and agreed that affirmative defenses 1, 6-9 are more accurately construed as specific denials rather than affirmative defenses. (Doc. 110, n. 2). Defendants state that they intend to assert those denials as appropriate during the trial. Therefore, the portion of POV's motion for summary judgment on affirmative defenses 1, 6-9, and 13 are due to be denied as moot.

*2. Third affirmative defense*

Defendants' third affirmative defense states: "POV constitutes a vast and powerful economic and political enterprise. The ICA and the enforcement of the ICA constitute an effort to enforce a monopoly, which is in violation of the Sherman and Clayton Anti-Trust laws which preempt any Florida laws, 52 U.S.C.A. §30101, 30109, 30122, and are thus unenforceable." (Doc. 49). There is no case law to support that the federal antitrust laws preempt Florida's laws on enforcing restrictive covenants. In fact, federal and Florida antitrust laws are analyzed under the

same rules and case law. Fla. Stat. § 542.32 ("It is the intent of the Legislature that, in construing this chapter, due consideration and great weight be given to the interpretations of the federal courts relating to comparable federal antitrust statutes.").

Additionally, the Florida statute that governs the enforceability of restrictive covenants requires that a plaintiff first prove the existence of a legitimate business interest. Fla. Stat. § 542.335. Where there is no legitimate business interest established to be protected such that a restraint on trade is simply being used to restrain ordinary competition, as opposed to prevent an unfair advantage from being gained, the restrictive covenant is unenforceable. *See, e.g., Delivery.com Franchising, LLC v. Moore*, No. 20-20766-CIV, 2020 WL 3410347, at *11 (S.D. Fla. June 19, 2020), *report and recommendation adopted*, No. 20-20766-CIV, 2020 WL 4464674 (S.D. Fla. July 14, 2020) (denying a preliminary injunction where a plaintiff sought to restrain ordinary competition by enforcing a restrictive covenant). Therefore, the factual allegations in the defendants' third affirmative defense are more accurately construed as a challenge to the adequacy of POV's prima facie case.

Moreover, the laws that the defendants cited to in their answer (52 U.S.C. §§ 30101, 30109, 30122) are not antitrust laws. These laws involve federal election campaign finance and are completely unrelated to the factual allegations in the defendants' third affirmative defense.

Defendants' third affirmative defense misstates the law, and the factual allegations are more accurately construed as a challenge to POV's prima facie case. Therefore, POV's motion for summary judgment as to defendants' third affirmative defense should be granted.

*3. Fifth affirmative defense*

Defendants' fifth affirmative defense states: "As part of the enforcement of the ICA, POV required that the Defendants make illegal and improper political contributions and donations, in violation of Federal and State law and they are estopped to enforce the ICA." (Doc. 49).

Defendants claim that this defense is for unclean hands, which is an "equitable remedy which allows the court to deny a party affirmative equitable relief by a court of equity on the ground that [the] conduct has been inequitable, unfair, dishonest, fraudulent or deceitful as to the controversy in issue." *Iberiabank v. Daer Holdings, LLC*, No. 8:12-CV-2872-T-30MAP, 2013 WL 980604, at *1 (M.D. Fla. Mar. 13, 2013). "A defendant asserting unclean hands as a defense must demonstrate that plaintiff's wrongdoing was *directly related* to the claim asserted in the complaint and that defendant was personally injured by plaintiff's conduct." *Id.* (emphasis added).

Even taking Defendants' allegations of improper political contributions as true, this wrongdoing is not related to any claims asserted in the complaint (breach of the ICAs, misappropriation of trade secrets, computer fraud and abuse, tortious interference, and civil conspiracy) and fails as a matter of law. Therefore, POV's motion for summary judgment as to Defendants' fifth affirmative defense should be granted.

*4. Tenth affirmative defense*

Defendants' tenth affirmative defense states: "Any information, documents, procedures, or policies obtained by any of these Defendants was broadly disseminated by POV and made available to persons and entities not subject to any restriction and thus, POV has waived and is not entitled to claim any protection, either by contract or by Federal or State law." (Doc. 49).

"An affirmative defense is a defense which admits the essential facts of a complaint and sets up other facts in justification or avoidance." *Meth Lab Cleanup, LLC v. Spaulding Decon,*

*LLC*, No. 8:14-CV-3129-T-30TBM, 2015 WL 4496193, at *7 (M.D. Fla. July 23, 2015). Defendants have indeed set up other facts—that POV broadly disseminated the information it claims is confidential—in justification for their alleged improper access to the information. Additionally, waiver has previously been recognized as an affirmative defense. *See Milgram v. Chase Bank USA, N.A.*, No. 19-CV-60929, 2020 WL 3791609, at *3 (S.D. Fla. July 6, 2020) (denying motion to strike waiver affirmative defense). Therefore, POV's motion for summary judgment should be denied as to Defendants' tenth affirmative defense.

**C. Defendants' motion for partial summary judgment**

Defendants move for summary judgment as to the non-competition and non-solicitation aspects of POV's claims for breach of contract regarding the individual defendants (Counts I-III, XI-XII, XIV-XV), violations of the Federal Computer Fraud and Abuse Act ("CFAA") (Count VI), and violations of the Florida Computer Abuse and Data Recovery Act ("CADRA") (Count VII).

1. *Non-competition and non-solicitation aspects of POV's breach of contract claims (Counts I-III, XI-XII, XIV*-XV)

First, Defendants seek summary judgment on the non-competition and non-solicitation aspects of POV's breach of contract claims. Defendants claim that their ICAs "expired," and were never "terminated," which is the word used in the ICAs. Defendants raised a similar argument at the motion to dismiss stage (Doc. 12), which was rejected by the District Judge. (Doc. 26). Defendants raised this argument again here claiming that it is meritorious and should also be considered at this stage.

The dispute focuses on whether the word "terminate," as used in the ICAs, only means to end the agreement prior to the end of the contract. Defendants claim that it does.

The ICAs provide:

> Nature of Work, "This Agreement shall commence on the date first above written and shall continue for **a period of one year**, if not earlier **terminated**. This Agreement may be **terminated** at any time with or without cause and without any reason being given, by either party."
>
> Non-Compete, "During the term of this Agreement, and for a period of twenty-four (24) months **following the termination** of the Agreement, Salesperson shall not directly or indirectly engage in and shall have no interest in any business or entity, whether as an owner, shareholder, member, employee, agent, consultant, contractor, or other affiliate of any kind, that is in any way involved with the sale, marketing, leasing, management, or the closing of sales transactions, of real estate situated within the geographic area known as The Villages® community as it exists at the time of termination of this Agreement (the "Restricted Area").
>
> Non-Piracy. During the term of this Agreement, and for a period of twenty-four (24) months **following the termination** of this Agreement, Salesperson agrees that Salesperson will not engage directly or indirectly in competition with VILLAGES by directly or indirectly soliciting or accepting real estate business from any customer of VILLAGES, former customer of VILLAGES or any potential customer of VILLAGES being solicited for business by VILLAGES at the time of the termination of this Agreement, regardless of the location of such specific customer, and regardless of the place of work of Salesperson. During such twenty-four (24) month period, Salesperson will not perform any of the services performed by POV or VILLAGES for any customer of VILLAGES, former customer of VILLAGES or any potential customer of VILLAGES being solicited for business by VILLAGES at the time of termination of this Agreement, regardless of the location of such specific customer, and regardless of the place of work of Salesperson.

(Docs. 41-1, 41-2, 41-3, 41-4, 41-5, 41-7, 41-8, at §§ 1, 10, 11) (emphasis added)

The individual defendants continued to work for POV after the one-year term of the ICAs. (Doc. 52-2 at p. 7, ¶¶ 26-32). Defendants claim that because the ICAs "expired," were never renewed, and were not "terminated," the 24-month restriction does not apply. Notably, the ICAs do not even contain the term "expired." Yet, the defendants claim that the ICAs "expired," and did not "terminate" in the way the ICA uses the term.

The court must examine the disputed terms "in the context of the entire agreement, giving the words their plain and ordinary meaning as understood by a reasonable person." *Meth Lab Cleanup, LLC*, 2015 WL 4496193, at *4. Contract interpretation is a question of law, "decided by reading the words of a contract in the context of the entire contract and construing the contract to effectuate the parties' intent." *Id.* "That intent is derived from the objective meaning of the words used." *Id.*

The ICAs clearly state that the term of the agreement is for one year. The non-competition and non-solicitation provisions apply during the one-year term of the agreements, and for a period of 24 months following the termination of the agreement. The plain and ordinary meaning of "termination" is "end in time or existence: conclusion." *Termination*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/termination. Although the ICAs discuss that the agreements may be terminated early, an ordinary person would also understand the end of a contract's term as its "termination."

The Defendants' interpretation is strained and illogical, as POV notes:

> [U]nder Defendants' proposed interpretation, the non-competes would have been enforceable if POV had unilaterally "terminated" the ICAs one day before their terms concluded, but not if the terms simply concluded. That illogical result is clearly opposed to the Parties' intent, the language of the ICA's, and the legislature's directive to construe non-competes in favor of enforcement.

(See Doc. 109, p.8, n.13).

Additionally, Defendants' reliance on *Sanz v. R.T. Aerospace Corp.*, 650 So. 2d 1057 (Fla. Dist. Ct. App. 1995) is improper. In *Sanz*, the non-compete provision applied following the "termination of his *employment*." *Id.* at 1059. Whereas here, the provisions apply following the "termination of the *agreement*." In *Sanz*, the signed agreement with the non-compete provision had expired, and Sanz continued to work for his employer. *Id.* After Sanz no longer worked for

the employer, the court determined that the non-compete provision was only applicable if Sanz terminated his *employment* during the life of the written agreement. *Id.* These set of facts are distinguishable because in this case, the termination of the *agreement* triggered the 24-month restriction. Unlike *Sanz*, this isn't a situation that would require post-term survival of the restrictive covenant. The agreement terminated after one year, and that termination triggered the 24-month non-compete provision. Therefore, Defendants' motion for summary judgment should be denied as to the non-competition and non-solicitation aspects of POV's breach of contract claims.

*2. Violations of CFAA (Count VI)*

Next, Defendants seek summary judgment on POV's claim for a violation of the federal Computer Fraud and Abuse Act. The CFAA is a computer authorization statute that requires a plaintiff to show that a defendant either intentionally accessed a protected computer without authorization or exceeded their authorized access to the protected computer. 18 U.S.C. § 1030; *EarthCam, Inc. v. OxBlue Corp.*, 703 F. App'x 803, 806 (11th Cir. 2017).

POV's CFAA claim involves information allegedly accessed by the individual defendants while they worked for POV. Therefore, at issue is whether the defendants exceeded their authorized access. The CFAA defines "exceeds authorized access" as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). The Eleventh Circuit has recognized that a "person exceeds authorized access if he or she uses the access in a way that contravenes any policy or term of use governing the computer in question." *Earthcam,* 703 F. App'x at 808; *see also United States v. Van Buren,* 940 F.3d 1192, 1208 (11th Cir. 2019), *cert. granted*, 140 S. Ct. 2667 (2020) (holding that the defendant committed computer fraud when "he accessed only databases that he was authorized to use, even though he did so for an inappropriate reason");

*United States v. Rodriguez*, 628 F.3d 1258 (11th Cir. 2010) ("Rodriguez exceeded his authorized access . . . when he obtained personal information for a nonbusiness reason [and] his access of the victims' personal information was not in furtherance of his duties as a TeleService representative.").

POV has offered evidence of the Online System User Agreements signed by the individual defendants that outlined the policy that the defendants could only access the computer systems for company purposes and not for personal gain. (Doc. 109, Exhibits C, D, E, F, G, H). POV also offered evidence of the Acceptable Use Policy, which provides that accessing data for any other purpose other than conducting official business is prohibited. (Doc. 109, Exhibit I). Although there is no dispute that the individual defendants were employed by POV at the time they accessed this information, POV contends that the individual defendants had plans to leave POV and before announcing their plans, accessed customer files and marketing materials to compete with POV. Therefore, genuine disputes of material fact exist as to whether the individual defendants exceeded their authorized access to the information.

Defendants also seek summary judgment on the issue of CFAA damages. 18 U.S.C. § 1030(a)(2)(c) states that whoever "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer" violates the CFAA. The CFAA permits "any person who suffers damage *or* loss by reason of a violation of this section" to bring a civil action against the violator. 18 U.S.C. § 1030(g) (emphasis added). A civil action may only be brought under CFAA "if the conduct involves one of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." 18 U.S.C. §1030(g). Subclause (I), applicable here, permits an action if the plaintiff incurs a "loss" of at least $5,000 as a result of the defendant's violation of the CFAA. 18 U.S.C. § 1030(c)(4)(A)(i)(I).

The CFAA defines loss as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11); *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1175 (11th Cir. 2017). POV has submitted evidence that it spent over the $5,000 requirement investigating the supposed unauthorized access and attempting to recover the data. (Doc. 109, Exhibit Q).

Accordingly, because genuine disputes of material fact exist, summary judgment is due to be denied as to POV's CFAA claim.

*3. Violation of CADRA (Count VII)*

Finally, Defendants seek summary judgment on POV's claim for a violation of the Florida Computer Abuse and Data Recovery Act. Like the CFAA, the purpose of CADRA is safeguard computer systems against unauthorized access. *See* Fla. Stat. § 668.801. POV has submitted evidence that it spent over $5,000 investigating the supposed unauthorized access and attempting to recover the data. (Doc. 109, Exhibit Q).

CADRA defines "without authorization" as:

> access to a protected computer by a person who: (a) is not an authorized user; (b) has stolen a technological access barrier of an authorized user; or (c) circumvents a technological access barrier on a protected computer without the express or implied permission of the owner, operator, or lessee of the computer or the express or implied permission of the owner of information stored in the protected computer.

Fla. Stat. § 668.802(9). "Authorized user" is defined as:

> A director, officer, employee, third-party agent, contractor, or consultant of the owner, operator, or lessee of the protected computer or the owner of information stored in the protected computer if the director, officer, employee, third-party agent,

> contractor, or consultant is given express permission by the owner, operator, or lessee of the protected computer or by the owner of information stored in the protected computer to access the protected computer through a technological access barrier. Such permission, however, is terminated upon revocation by the owner, operator, or lessee of the protected computer or by the owner of information stored in the protected computer, or upon cessation of employment, affiliation, or agency with the owner, operator, or lessee of the protected computer or the owner of information stored in the protected computer.

Fla. Stat. § 668.802(1).

Although the individual defendants claim they were indeed "authorized users," POV contends that Defendants had decided to end their business relationship with POV and at that point, accessed customer files and marketing materials in preparation to compete with POV. CADRA clearly states that permission is terminated "upon cessation of employment, affiliation, or agency" with the owner of the information stored in the protected computer. *Id.* Therefore, genuine disputes of material fact exist as to whether the defendants' decision to end their business relationship with POV terminated their authorization.

Accordingly, because genuine disputes of material fact exist, summary judgment should be denied as to POV's CADRA claim.

## IV. RECOMMENDATION

For the reasons discussed above, I respectfully recommend that Defendants' motion for sanctions (Doc. 107) and motion for partial summary judgment (Doc. 101) be denied, and that POV's motion for partial summary judgment (Doc. 100) be granted as to Defendants' third and fifth affirmative defenses, but denied as to Defendants' tenth affirmative defense, and denied as moot as to affirmative defenses 1, 6-9, and 13.

Recommended in Ocala, Florida on January 25, 2021.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy